# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                      **Case No:   6:17-cv-2042-Orl-28KRS**

**APPROXIMATELY $64,470 and**
**RICHARD THOMAS JAQUEZ,**

      **Defendants.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **UNITED STATES' MOTION FOR DEFAULT JUDGMENT OF FORFEITURE (Doc. No. 14)**
>
> **FILED:**      **February 20, 2018**

## I.   BACKGROUND.

On November 28, 2017, the United States filed its Verified Complaint for Forfeiture *In Rem* against Approximately $64,470 ("Defendant Funds").  Doc. No. 1.  In the complaint, the United States alleges that the Defendant Funds were seized in May 2017 from Richard Thomas Jaquez and his backpack.  Agents of the Drug Enforcement Agency ("DEA") took custody of the Defendant Funds, and they remain in the custody of the United States.  *Id.* ¶ 5.

The Court issued a warrant of arrest *in rem* on November 29, 2017.  Doc. No. 6. Thereafter, the United States complied with Federal Rule of Civil Procedure Supplemental Rule G(4)(a)(i)-(iv) by posting a notice of this civil forfeiture action on its official website,

www.forfeiture.gov, for a period of 30 consecutive days. Doc. No. 10. It also complied with Supplemental Rule G(4)(b) by sending notice of this civil forfeiture action to the only potential claimant, Mr. Jaquez, by certified and first class U.S. Mail on December 1, 2017. Doc. No. 11-1 ¶¶ 3-6.[1] The notice stated that Jaquez was required to file a verified claim within 35 days after the date of the notice—that is, by January 5, 2018. Doc. No. 11-2. That deadline passed, and Jaquez did not file a claim or answer. Accordingly, following a motion by the United States, the Clerk entered a default against Mr. Jaquez. Doc. Nos. 11-13.

The United States now seeks the entry of a default judgment of forfeiture that forfeits to the United States all right, title, and interest in the Defendant Funds, which shall vest clear title to the Defendant Funds in the United States of America. Doc. No. 14. Mr. Jaquez has not filed a response to the motion, and the time for doing so has passed. Accordingly, the motion is ripe for decision.

## II.  ALLEGATIONS OF THE VERIFIED COMPLAINT.

In 2017, Mr. Jaquez was a resident of Oxnard, California, which is approximately 60 miles west of Los Angeles. Doc. No. 1 ¶ 9. On January 18, 2017, a law enforcement officer stopped Mr. Jaquez for a traffic infraction in Texas. *Id.* ¶ 10. At the time of the stop, Mr. Jaquez was driving a rental vehicle and heading east on Interstate 40 ("I-40"). *Id.* The officer found a duffel bag containing approximately 25 pounds of marijuana in Mr. Jaquez's vehicle. *Id.*

---

[1] Supplemental Rule G was adopted in 2006 because "reasons [had] appeared to create sharper distinctions [between admiralty *in rem* actions and civil forfeiture *in rem* actions] within the framework of the Supplemental Rules." 2006 Advisory Committee Notes to Supplemental Rule G. Thus, civil forfeiture actions are governed by Supplemental Rule G, and admiralty *in rem* actions are governed by Supplemental Rule C. It appears that Local Admiralty Rule 7.03 has not yet been updated to reflect that division. Regardless, the publication requirements of Local Admiralty Rule 7.03 apply only to notices required by Supplemental Rule C, which is not applicable here.

I-40 is a major east-west interstate highway running through the south-central portion of the United States.  *Id.* ¶ 11.  If one were to travel from Oxnard to Orlando, I-40 would be a logical route.  *Id.*  California is a known source for marijuana.  *Id.* ¶ 27.  It is common for marijuana traffickers to transport marijuana from California to Florida in vehicles.  *Id.*  The traffickers often then fly back to California with the trafficking proceeds.  As a result, traffickers often purchase one-way airline tickets.  *Id.*

On May 3, 2017, Mr. Jaquez was at the Orlando International Airport.  *Id.* ¶ 13.  Five days earlier, he booked a one-way flight from Orlando to Los Angeles.  *Id.*  After he went through security screening, two law enforcement officers approached Mr. Jaquez to inquire about his travel.  *Id.* ¶ 14.  He told them he was in Orlando visiting family.  *Id.* ¶ 15.  When asked if he was carrying any contraband or currency, Mr. Jaquez responded that he had no contraband, but was traveling with $50,000 in cash.  *Id.* ¶ 16.  One of the law enforcement officers asked if he could verify the amount.  *Id.* ¶ 17.  Mr. Jaquez then opened his backpack and handed the officers two Crown Royal[2] cloth bags.  *Id.*  One of the bags contained three bundles of currency wrapped in rubber bands.  *Id.* ¶ 18.  The other bag contained three bank envelopes of currency.  *Id.* ¶19.  After examining the currency, an officer asked if he could search Mr. Jaquez's backpack.  *Id.* ¶ 20.  Mr. Jaquez did not consent and stated that he did not wish to answer any more questions about the money.  *Id.*

Individuals who handle controlled substances often get traces of the substances on their hands and clothing.  *Id.* ¶ 22.  These trace amounts can easily be spread to other items the individual touches, such as currency.  *Id.*  A positive alert to U.S. currency by a properly trained dog indicates that the currency has either been handled by someone who had trace amounts of a

---

[2] Crown Royal is a brand of whiskey.

controlled substance on their hands, or the substance has recently been in close proximity to a controlled substance. *Id.*

After Mr. Jaquez declined a search of his backpack, a properly trained narcotics detection dog positively alerted to the odor of drugs on Mr. Jaquez's backpack. *Id.* ¶ 21. Officers explained to Mr. Jaquez that they were going to keep the backpack so that they could obtain a search warrant for it. *Id.* The narcotics detection dog also positively alerted to the odor of drugs on the currency found in the two Crown Royal bags. *Id.* ¶ 22. Those funds were then seized. *Id.* Mr. Jaquez asked the officers if he could retrieve his anti-anxiety medication from a pouch inside the backpack. *Id.* ¶ 23. The officers advised Mr. Jaquez that they could only do so if he first permitted them to verify the contents of the pouch. *Id.* Mr. Jaquez agreed. *Id.* The officers then retrieved the pouch from the backpack. *Id.* They found that it contained the medication and marijuana residue. *Id.* They gave Mr. Jaquez his medication. *Id.*

DEA agents subsequently obtained a federal search warrant for Mr. Jaquez's backpack. *Id.* ¶ 24. Upon searching the backpack, the agents located and seized three envelopes containing $17,870, bring the total seized to $64,670. *Id.* ¶¶ 25, 28(c).

Mr. Jaquez lived in Florida in 2013 and 2014. *Id.* ¶ 28(d). Records from the Florida Department of Labor and Employment Security indicated that the reported income for Mr. Jaquez was $2,196.70 in 2014 and $9,203.81 in 2013. *Id.* ¶ 26.

**III.   ANALYSIS.**

In general, a court may enter a default judgment when the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Thus, to support an entry

of default judgment in a civil forfeiture case, a complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *See* Fed. R. Civ. P. Supp. Rule G(2)(f); *United States v. $134,972.34 Seized from FNB Bank, Account Number—5351*, 94 F. Supp. 3d 1224, 1229-30 (N.D. Ala. 2015) (explaining that the heightened pleading standard of Supplemental Rule G(2) applies in civil forfeiture cases, not the *Twombly/Iqbal* pleading standard from Rule 8, although the *Twombly/Iqbal* standard may provide guidance in deciding a motion to dismiss a civil asset forfeiture complaint to the extent it does not conflict with Supplemental Rule G(2)).[3]

Upon review, the facts alleged in the verified complaint and set forth above support a reasonable belief that the United States will be able to meet its burden of proof at trial and show that the Defendant Funds constitute proceeds or are traceable to proceeds of federal controlled substance offenses, or were furnished or intended to be furnished in exchange for a controlled substance and, thus, are subject to forfeiture under 21 U.S.C. § 881(a)(6).   Notice was provided in accordance with Supplemental Rule G(4)(a) and (b), and no claims or answers have been timely filed.   Accordingly, I respectfully recommend that the Court find that the United States is entitled to a entry of a default judgment of forfeiture, pursuant to Fed. R. Civ. P. 55(b)(2).

## IV.   RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court **GRANT** the United States' Motion for Default Judgment of Forfeiture (Doc. No. 14), **DIRECT** the Clerk of

---

[3] The United States did not include this standard in its motion.   Nor did it brief whether its complaint provided a sufficient legal basis for the entry of a default judgment.   Instead, it focused on its compliance with the procedures required to obtain a default judgment.   In the future, the Court may deny motions for default judgment if they do not establish, with citations to authority, that the complaint provides a sufficient legal basis for the entry of a default judgment.

Court to enter a default judgment forfeiting to the United States all right, title, and interest in the Defendant Funds and, thereafter, to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on March 13, 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy